May it please the Court, my name is Lasley Witt and I am here today on behalf of Petitioner Sean Azeez. I would like to reserve three minutes for rebuttal, please. All right. You'll have to keep an eye on the clock because we won't revise you, okay? Okay. Okay, great. I will. Thank you. Since this is a habeas case, today I will need to speak about 2254D, and I will. But to make sure that we're all on the same page, I'd like to start with two facts on which we agree. There are four defendants here, two African-American, two non-African-American. They all pled guilty to voluntary manslaughter. With respect to the two non-African-American defendants, the court imposed probation. With respect to the two African-American defendants, the court imposed upper term of 11 years. Were those the only confounding differences between the four? The difference in sentencing, Your Honor? Yes. And race. Were those the only differences between them? No. Of course not. Because you hadn't mentioned them up to now. Why don't you mention them? Well, because I was just starting on some points of agreement. Isn't that a point of agreement? I mean, one of them was 16 years old. That's a point of agreement. You're absolutely right. And I would love to speak to each of those areas. With respect to the fact that one of the petitioners was 16, one of the non-African-Americans, to paraphrase Justice Souter's comment about discharged jurors and Miller L., defendants like jurors do not come from cookie cutters. They are not identical. And that is absolutely true with respect to the fact that one of the non-African-Americans was only 16 years old. But the test here requires us to look at all the circumstances, not just one. And here the trial court relied on six aggravating factors to impose the upper term on petitioner. And all six were either equally applicable to the non-African-American jurors or were not applicable to defendant. Here the trial court considered and discussed the mitigating evidence presented by petitioner. But Counselor, at some point in reviewing the transcript of the sentencing, I realized that in fact he did mention, the judge did mention the aggravating factors, but also the mitigating. He talked about Aziz's age or the fact that he was never going to commit. He felt that he was never going to come before a criminal court again. And so he did mention some mitigation, the fact that he was raised by a good family, that his family did what they could with him, that he had strained out his life. So there was some rehabilitation mentioned as mitigation. It's true that in the very beginning of the sentencing hearing when he's discussing whether or not to grant probation, as opposed to when he's considering the aggravation and mitigation with respect to the actual sentence, the 3, the 6, or the 11 years that he could give, he does in passing mention that his family is there that day. And it's interesting that you mention his age because he later uses his age as an aggravating factor when deciding between the 3, 6, and the 11. So I think you're absolutely right, there is a brief mention right before he, when he's discussing sentencing. But when he looks at the aggravation and mitigation, he uses his age against him, that he's 21 and the other defendants were 16 to 19. Is that improper under the circumstances? I mean he was the adult and he might be thought to be more responsible, right? Yes, I agree that he was 21 years old. I would like to say that, what's interesting is there's two ways you could look at his age. The way in which the court referenced it was to say that he was responsible for Figuracion who was the minor, for the minor being involved. And that's one factor in aggravation, one of the other factors in mitigation. To get the record, Figuracion and Petitioner didn't know each other at all. They had never met before that night, they never saw each other after that night. Figuracion, the 16 year old, was in fact good friends with Wymer and Timbal. He called it hero worship of those boys and he had known them for many, many years. He couldn't identify Petitioner when police came to speak with him either by name or by face and neither could Petitioner. He identified all the other men that were there that night but he could not identify the 16 year old. So that factor that the court relied on, really the record doesn't support. The other way that you could look at age, of course, is that he was older and by that he bore more responsibility. But we're not talking about a mature 35 year old here. We're talking about a 21 year old who was, the other gentlemen were 19 except for the one that was 16. And in that situation the other boys had all been friends for many years. Petitioner had just met them. So I don't think that he could be characterized as the leader. And those are the two points that the state points to in arguing that 2254D bars relief. But I would just like to say that the test really requires the courts to look at all the circumstances, not just one. And those are the two, the only factors that the state relies on to say that the non-African Americans were not similarly situated. I believe here that based on the disparate treatment of the aggravating factors, the disparate treatment of mitigation and the disparate treatment in the way that it viewed the probation recommendation with respect to the non-African Americans and the African Americans as well as Dr. Hessler, the victim's father's recommendation. Probation and the father recommended three years or requested three years. And of course the trial court ignored that and sentenced him to 11 years. Did probation and Dr. Hessler recommend, did the judge follow the recommendation of probation and Dr. Hessler for the two non-African American defendants? In a way, yes. Dr. Hessler for Figuracion requested probation and that was followed, yes. For Weimer they requested three years and he was given three years but it was then, and probation, it was stayed. So yes, did follow and mentioned it in sentencing. When you look at the African American sentencing hearing, the court doesn't even mention what probation has recommended and then say, well, I'm deviating from that. If there's no other questions at this time, I'd like to reserve the rest of my time. Thank you. Good morning, Your Honor. May it please the court, I'm Kevin Viena, California Deputy Attorney General here for Apelli and respondent in this matter. Mr. Viena, why don't we pick up where Ms. Witt left off. Why didn't Dr. Hessler's recommendations as to Aziz and the other African American get followed whilst they were followed as to the non-African Americans? Well, I guess because the trial judge didn't find him to be perfectly and completely persuasive and the trial judge disagreed with Mr. Hessler's recommendations which were a call for general leniency and a recommendation that sentencing these people 14 years later could serve little legitimate social purpose. And the trial judge could reasonably disagree with that. He didn't disagree as to the non-African Americans. Well, that's correct, Your Honor, and the reason he didn't do that is because those two, one was a boy at the time of the crime, one was a young man who essentially ended what was remarkably harmful, devastating 14 years of absence of closure for Mr. Hessler to a certain extent, but more particularly for Kim Cooney. And Ms. Cooney, who also made recommendations with regard to the defendants, recommended that everyone get the upper term. Her life was devastated for 14 years. I think, I mean, this was a very lengthy sentencing procedure for all four of these defendants. Lots of evidence on both sides or lots of full presentation of mitigation for all of them. This was a difficult case for any trial judge where we have folks who apparently, well, where we have a horrible crime that's committed. A young man, 30-year-old Mr. Hessler, lost his future. It may have led directly to the death of his mother, who was devastated. His father, Ms. Cooney, suffered for 14 years. That's a very difficult circumstance when you pair that with folks who, when you pair that with circumstances where there's no indication that anyone, with the possible exception of an extraordinarily difficult challenge for a trial judge. And consequently, we'll give the trial judge, or California anyway, gives the trial judge a great deal of discretion in selecting the appropriate sentence in order to carry out society's interests. And this trial judge, Judge O'Neill, thought that the circumstances regarding Mr. Figueracion being 16 years old at the time of the trial and the circumstances of Mr. Weimer, who brought this matter to closure for Kim Cooney, deserved extraordinary, I would say extraordinary leniency in terms of sentencing. That didn't apply to Mr. Bruster and it didn't apply to Mr. Aziz. Were those the only two factors that didn't apply? Figuercion because he was 16? No, they weren't. And the other gentleman, Weimer, because he cooperated. Were those the only two factors that didn't apply? Because the rest of the aggravation applied to them as well. Much of it certainly applied because all four of these boy or young men at the time of the court trial were engaged in the exact same crime. None had gone on to a life of what I would say is severe criminal activity, although it's not quite clear with regard to Weimer because he was ultimately discovered because of some other involvement in the criminal justice system. But these were not gang members. They were not career criminals. They were folks who, over the course of 14 years, had largely avoided involvement with the criminal justice system. Other factors that mattered, of course, one of which was, and has been discussed, is Mr. Weimer as a leader in this activity. That is, he is the transportation. He is the factor without which not. These crimes could not have occurred. But the district court judge or the trial judge did not make that finding as to Aziz. I think, I mean, I guess what I would say is I think it's unfair to a trial judge to require him to express everything that he might have observed in the course of several lengthy hearing proceedings. And, in fact, California does not do that. California law quite clearly, as expressed by the Court of Appeal at the Supplemental Excerpts of Record, page 10, says that trial judges are presumed to have acted to achieve legitimate legal ends. Similarly, they are presumed to have considered all of the factors. Now, Judge O'Neill certainly was familiar with California law. He knows that he is presumed to have acted properly. And, consequently, he need not be concerned to list every conceivable factor that he has observed in the course of this. I suppose, I mean, Ms. Witt for Mr. Aziz has done a very nice job laying out the facts and laying out her argument. And her brief is well done. But I would disagree with one important point in her brief. She says that the district court simply deferred to the determination of the state court under the deferential standard of review that applies under Section 225-4D. I disagree with that. The magistrate judge, Judge Storms, said that not just that she deferred to the decision of the state court judge, but that she agreed with that decision after having conducted her own review of the entire record. Similarly, Judge Hayes said that after his review of the record, he found no evidence that the judge imposed a harsher sentence due to race. That is, those are two judges, I would say fair-minded, who observed the very same fact situations and reached the same conclusion. That is, that this sentence for Mr. Aziz was not the right result of race discrimination. But you're not suggesting that we abandoned the deference standard imposed on us by EDPA, are you? Not at all, Your Honor. What I'm suggesting is that when two federal judges don't just expressly agree with the determination of the state court judge, that's a pretty good indication. That's a make-weight argument. Mine is? Yours is a make-weight argument. All right. As Judge O'Neill had to make a judgment based on what was before him, you have to do that as well, Your Honor. I think that it powerfully demonstrates the reasonableness of the state court determination. None of these defendants were exactly alike. All of them had some differences. Bruster was... I see I'm approaching the end of my time. Thank you for it. Bruster was uncooperative to the end, perhaps because he left no fingerprint, but he was uncooperative. And Mr. Aziz, despite his... what I think by the end were heartfelt expressions of remorse, he initially, in his interview with the police, he minimized his involvement. Justice is difficult often to achieve. Perfection is perhaps always difficult to achieve. This was a very difficult case. Terrible crime, not terrible defendants. This trial judge looked at, heard a great deal of evidence, looked at it as presumed to have considered at all, and exercised his judgment. He thought that the appropriate sentence for Mr. Bruster and Aziz was aggravated because this was worse than most voluntary manslaughter. He thought it was... leniency was due to Mr. Figueroa because of his age, and to Mr. Weimer for bringing this matter to a close. That determination was not... it can be debatable, may be debatable, but it wasn't incorrect, and it would be incorrect to say that it was motivated by race discrimination. Throughout the brief, just one last question, throughout the brief, or parts of the brief, the judge's statement keeps coming forth about the defense counsel and the judge being the minorities, the white males who have served in the military, something to that effect. Yes, Your Honor. What... how much weight should that be given, or what's your position on that statement? How does that come into sentencing? That statement was... that statement was... occurred in a part of Judge O'Neill's discussion when he was talking about recognition of the mistakes that young people make. The term that he had used right before was that young people, young men especially, don't recognize their mortality. That went over to he saw things differently. His life was different because he was no longer 21 years old or 19 years old. That as people age, they recognize that mortality, they recognize perhaps the risk or the tragedy of harming other people, and people begin to see that somewhat differently. Mr. Aziz hadn't reached fully that at age 21, and now he was 35, and he was remorseful. Judge O'Neill's comment about the age was that he and the defense counsel, Mr. Nimmo, were, I think kindly, I would say, past middle age. But that's... he didn't say anything about age in his comment. He said, we're the minority, we're white, we're military veterans. That is what that one sentence said, but in context, he was talking about... he began by discussing age and awareness of mortality, and then he mentioned that he and Mr. Nimmo were the same age, and then he said, we're Vietnam veterans and we feel like... And we're white. White males... White males have nothing to do with age. Yes, I don't know why he said white. I don't know why. I think simply to note that almost everyone in our country can claim to be a minority of some sort. He was disdaining the claim of the defendant that the reason he hadn't come forward, said Aziz, was as a minority, he thought he wouldn't be getting due process in today's justice system. And Judge O'Neill was brushing that aside, saying, look, I'm more of a minority than you are. I think he was. I agree with the court that that comment indicated that he was not terribly persuaded by Mr. Aziz's explanation for why he didn't come forward. In fact, I think what I would say is that Judge O'Neill's response was, you didn't come forward, it was not because you feared mistreatment, it was because you feared fair treatment after engaging in a burglary and robbery that resulted in a murder. But I wish he hadn't said it. It does seem to be insensitive. But three courts or four courts have looked at it and said that they don't see that as an indication that the sentence to Mr. Aziz was the result of race discrimination. Thank you very much. Thank you, Your Honor. Rebuttal? You might want to discuss, Ms. Witt, what do we make about that? What importance should we give to that offhand remark that the judge made? Yes. It's certainly a curious statement. And I think that in and of itself, it does not show that he relied on race. But when you pair that comment with the disparate treatment of aggravation, the disparate treatment of mitigation, and the disparate treatment of the probation department and the family's recommendations, I think that it is one more factor to consider in the calculus about whether the African Americans received fair treatment here. I would like to also touch just a little bit on Weimer's cooperation. Certainly acceptance of responsibility and cooperation are legitimate reasons for lenient treatment, but I'd like to look at what the record really shows in that respect with Weimer. The crime here occurred in 1995. Weimer, like Petitioner, said nothing. Weimer was arrested for a different offense in 2002, and he had the opportunity to speak with police then, and again, he did not. In 2008, because his fingerprints were in a national database, his fingerprint is linked to the crime. At that time, he's interviewed, and he does confess. Police then contact Petitioner, and Petitioner admits that he was the driver, that he was there that night, and he names all of the defendants except for the 16-year-old who he can't identify by name or by face. And in contrast to Weimer, who was arrested for a drug offense in the interim since the 1995 shooting, Petitioner had no criminal history. He had a family and a full-time career, and he did volunteer work in an after-school program. Considering all the facts, the fact that Weimer spoke with police in 2008, or the fact that Figuracion was 16, this is not sufficient to dispel the inferences of pretext, which arise from the disparate reliance on aggravating factors, the disparate treatment of mitigation, and the disparate treatment of the recommendations of probation department and the victim's family. Thank you very much. Thank you. Thank you, both counsel, for a very good presentation, and the case of Aziz versus Kate and Harris is submitted.
judges: Marquez, Fernandez, Bea